943 F.2d 48
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John T. COPLEY, Wanda Copley, Plaintiffs-Appellants,
v.
STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, Defendant-Appellee,
and
State Auto Property and Casualty Insurance Company, Defendant.
 No. 90-1789.
 United States Court of Appeals, Fourth Circuit.
 Argued May 7, 1991.
Decided Sept. 5, 1991.
As Amended Oct. 23, 1991.
 
 1
 Appeal from the United States District Court for the Southern District of West Virginia, at Huntington. Charles H. Haden, II, Chief District Judge. (CA-89-942-3)
 
 
 2
 James William St. Clair, St Clair and Levine, Huntington, W.Va., for appellants.
 
 
 3
 Arden John Curry, II, Pauley, Curry, Sturgeon & Vanderford, Charleston, W.Va., for appellees.
 
 
 4
 S.D.W.Va.
 
 
 5
 AFFIRMED.
 
 
 6
 Before K.K. HALL, Circuit Judge, CHAPMAN, Senior Circuit Judge, and CLAUDE M. HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 OPINION
 CLAUDE M. HILTON, District Judge:
 
 7
 Plaintiffs John T. Copley and Wanda Copley brought suit against the defendants State Automobile Mutual Insurance Company and State Auto Property and Casualty Insurance Company after receiving what they claimed to be insufficient payments under a home owners policy of insurance covering their residence. Both parties filed summary judgment motions for a determination of the extent of coverage under the policy. The United States District Court for the Southern District of West Virginia granted summary judgment in favor of the defendants, ruling first, that State Auto was only bound to pay the policy limits on the dwelling and not obligated to pay the replacement cost of the Copley home until it had been rebuilt and, second, that the replacement cost endorsement for personal property was limited to the amount of the personal property coverage stated on the face of the policy. A jury trial was held to determine the remaining issue of additional living expenses. The jury returned a verdict for the insurance companies and awarded the plaintiffs nothing. Plaintiffs appeal the court's rulings on the extent of coverage and the judgment of the jury. Finding no error below, we affirm.
 
 I.
 
 8
 On October 3, 1988, John T. Copley and Wanda Copley (hereinafter "Copleys") purchased a homeowner's policy of insurance from State Automobile Mutual Insurance Company and State Auto Property and Casualty Insurance Company (hereinafter "State Auto"), covering certain real and personal property owned by the Copleys and located at Route 1, Box 238, Fort Gay, West Virginia. The effective coverage dates of the policy were October 3, 1988 through October 3, 1989. The State Auto policy provided coverage in the amount of $70,200.00 for the dwelling, $7,020.00 on appurtenant structures, $49,140.00 on unscheduled personal property, and $14,040.00 for loss of use or additional living expenses. The Copleys paid a higher premium to obtain a Home Defender Special Coverage Endorsement to the policy. The special endorsement contained an inflation protection endorsement for personal property and a replacement cost provision covering real and personal property. The precise language in the endorsement specified that the residence was to be repaired or replaced prior to payment under the replacement cost provision.
 
 
 9
 On February 10, 1989, a fire totally destroyed the Copley's home and its contents. State Auto investigated the loss pursuant to its obligations under the home owners policy. Immediately after the fire, State Auto advanced the Copleys a total of $4,000.00 for living expenses. Within 21 days of the fire, State Auto issued a check to the Copleys in the amount of $51,140.00 for loss of personal property, reflecting the face amount of the policy for personal property loss and the amount required under the inflation protection endorsement. State Auto also paid to the Copleys the sum of $70,200.00 under the policy provision governing loss of the principal dwelling.
 
 
 10
 Finding the payments from State Auto to be insufficient under the terms of the policy, the Copleys instituted suit on July 28, 1989, in the Circuit Court of Wayne County, West Virginia. State Auto removed the case to the United States District Court for the Southern District of West Virginia on the basis of diversity jurisdiction. Both parties filed motions for summary judgment to determine the extent of coverage under the policy. The parties agreed that the special endorsement to the policy provided replacement cost coverage on the dwelling but disagreed as to when the policy proceeds were to be paid and how replacement cost was to be determined. The parties also took issue as to the meaning of the replacement cost provision governing personal property.
 
 
 11
 On April 20, 1990, the Court granted the defendants' motion for summary judgment. Finding the policy to be clear and unambiguous, the court ruled that until the Copleys' home was rebuilt, State Auto was only bound to pay the replacement cost of the Copley dwelling up to the policy limits of $70,200. The court determined that the replacement cost endorsement for personal property was limited to $49,140, the amount of the personal property coverage shown on the face sheet of the policy, together with the adjustment for inflation. The only triable issue of fact remaining was the matter of additional living expenses.
 
 
 12
 A jury trial was held on May 15, 1990 to ascertain the additional living expenses due under the policy. The plaintiffs claimed that they were entitled to additional living expenses in excess of the $14,040.00 limitation imposed by the Loss of Use provision in the policy. John and Wanda Copley testified at trial that they had expended far in excess of the $14,040.00 limitation stated in the policy. The Copleys testified that they purchased a mobile home to reside in while their residence was being rebuilt and stated they planned to sell the mobile home following the rebuilding of their residence. The mobile home cost in excess of $22,000. Joe Young, a licensed realtor in West Virginia and Kentucky, testified that there were no houses or trailers available for rent in the area. The President of the Lavalette State Bank, Timothy R. Kinseed, testified that he had discussed with Mr. Copley the plans for rebuilding the Copley residence. A local contractor, Ivory Williamson, testified on behalf of the Copleys that he had signed a contract to rebuild the Copley's home and that it would take at least five months for the actual construction plus one month to six weeks to have the plans prepared and to get ready to commence construction. State Auto called as a witness a project manager for a local construction company who testified that the company had not built a home in the last six and one-half years, although they had done repair of partially destroyed homes. The manager estimated that it would take approximately four months to construct a dwelling similar to the Copley residence that was destroyed by fire.
 
 
 13
 The court instructed the jury that they could find either that the Copleys did not intend to permanently replace their residence with the mobile home and award them extra living expenses or that the Copleys had permanently relocated to the trailer and were not entitled to additional living expenses. The jury returned a verdict for the insurance company and awarded the plaintiffs nothing. The plaintiffs appealed the court's summary judgment ruling and the jury verdict.
 
 II.
 
 14
 The Copleys appeal the district court's ruling that the personal property coverage provision in the State Auto policy was limited to the $49,140.00 amount stated on the face of the policy. The Copleys contend that the special endorsement to the policy modified the provision for loss of personal property to allow for replacement cost coverage without limitation.
 
 
 15
 The provisions of an insurance contract are construed as written. Soliva v. Shand, Morahan & Co., 345 S.E.2d 33, 35 (W.Va.1986). The language of an insurance policy must be given its plain, ordinary meaning. Adkins v. American Casualty Co., 114 S.E.2d 556, 559 (W.Va.1960). The terms of an insurance policy are not subject to interpretation, unless the policy is ambiguous. Soliva, 345 S.E.2d at 35. In determining whether a particular insurance contract provision is ambiguous, the policy must be considered as a whole and the provision at issue may not be taken out of context. Id.
 
 
 16
 The terms of the State Auto policy are clear and unambiguous and must be applied as written. Coverage C of the State Auto policy pertains to unscheduled personal property. The limit of liability for unscheduled personal property set forth on the face of the property is $49,140.00. The State Auto policy also contains a Home Defender Special Coverage Endorsement. Part F of this endorsement relates to the replacement cost coverage of personal property. Part F provides as follows:
 
 
 17
 Our limit of liability for loss on any item covered under this endorsement shall not exceed the smallest of the following amounts:
 
 
 18
 1. Replacement Cost. 2. The full cost of repair. 3. Any special limits of liability for specified items contained in the policy.
 
 
 19
 The district court correctly concluded that this endorsement did not abrogate the limitations on personal property coverage set forth on the face of the policy. The replacement cost endorsement specifically provides that liability for personal property loss does not exceed any specified limit contained in the policy. The replacement cost rider does not vitiate the 49,140.00 limitation contained on the face of the policy but, rather, it merely changes the method of calculating the value of the property loss up to the personal property liability limit. The Copleys were not entitled to receive any amount for loss of personal property over the personal property coverage limitations on the face of the policy, together with the inflation endorsement.
 
 III.
 
 20
 The plaintiffs contend on appeal that the district court erred in instructing the jury they could find that the Copleys had permanently relocated to a mobile home and were therefore not entitled to any additional living expenses. The State Auto insurance policy issued to the Copleys provided coverage for loss of use. The policy reads as follows:
 
 
 21
 Additional Living Expense. If a loss covered under this Section makes the residence premises uninhabitable, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. Payment shall be for the shortest time required to repair or replace the premises or, if you permanently relocate, the shortest time required by your household to settle elsewhere.
 
 
 22
 Based upon this policy provision, the district court instructed the jury that they could find either that the Copleys did not intend to replace their prior home with the mobile home and award them extra living expenses for the time period required to replace the premises or that the Copleys had permanently relocated and were not entitled to additional living expenses past the time when the Copleys moved into their mobile home.
 
 
 23
 The district court correctly instructed the jury on the allowance for additional living expenses. The evidence at trial included (1) the fact that the Copleys were paid $70,200.00 by State Auto for damage to their residence within 31 days of trial, (2) testimony by a local construction manager that it would take approximately four months for the Copleys to rebuild their home, (3) the fact that the Copleys purchased a mobile home that cost in excess of $22,000 and placed it on their property supported by a permanent foundation, and 4) the fact that at the time of trial, 15 months had passed since the Copley's residence had been destroyed by fire and 14 months had passed since State Auto had paid the Copleys $70,200 for their residence and the Copleys had not entered any contract to have their house rebuilt or initiated construction of a new residence. Based upon these facts, the jury had ample evidence from which it could conclude that the Copleys intended to replace their residence with the mobile home. The district court correctly instructed the jury that based upon the evidence at trial, they could find that the Copleys had permanently relocated to a mobile home and were not entitled to any additional living expenses.
 
 
 24
 The remaining issue on appeal is the plaintiffs' contention that they should be paid the home replacement cost coverage prior to the time replacement is actually made. The district court ruled that the awardable costs under the guaranteed home replacement provision were payable upon the repair or replacement of the home. The parties have represented that this issue has been resolved. The Copley's home has been rebuilt and State Auto has paid the plaintiffs the replacement costs due under special endorsement to the policy.
 
 
 25
 For the foregoing reasons, the disposition of the case below is
 
 
 26
 AFFIRMED.
 
 
 27
 K.K. HALL, Circuit Judge, and CHAPMAN, Senior Circuit Judge, joined.